IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:20-CR-149-D

UNITED STATES OF AMERICA          )
                                  )
              v.                  )          **ORDER**
                                  )
NYKEEM TAYQUAN ODOM,              )
                                  )
              Defendant.          )

On May 28, 2021, Nykeem Tayquan Odom ("Odom" or "defendant") moved to withdraw his September 24, 2020 guilty plea to possession of a firearm by a felon. See [D.E. 59]. In his motion, Odom attacked the performance of his former counsel and proclaimed his innocence. See [D.E. 60]. On July 23, 2021, the court held a hearing on the motion, and Odom's former counsel testified. See [D.E. 83]. The court credits the testimony of Odom's former counsel and denies Odom's motion to withdraw his guilty plea. In doing so, the court has considered the six relevant factors concerning a motion to withdraw a guilty plea. The court also has considered the thorough Rule 11 proceeding where Odom swore that he was pleading guilty because he was guilty. In denying Odom's motion, the court also has applied two important principles. First, the "reasonableness of counsel's actions may be determined or substantially influenced by the defendant's own statements or actions." Strickland v. Washington, 466 U.S. 668, 691 (1984). "Counsel's actions are usually based, quite properly, on informed strategic choices made by the defendant and on information supplied by the defendant," including defendant's admission of guilt. Id. Second, a guilty plea is not "a temporary and meaningless formality reversible at a defendant's whim." United States v. Hyde, 520 U.S. 670, 677 (1997) (quotation omitted). Rather, a guilty plea

is "a grave and solemn act," which a court only accepts "with care and discernment." Id. (quotations omitted).

## I.

On March 25, 2020, a federal grand jury in the United States District Court for the Eastern District of North Carolina indicted Odom and charged him with knowingly possessing a firearm on July 9, 2019, knowing that he was previously convicted of a crime punishable by imprisonment for a term exceeding one year in violation of 18 U.S.C. §§ 922(g)(1) and 924. See [D.E. 3]. On June 17, 2020, Odom made his initial appearance, and the court appointed the Federal Public Defender to represent him. See [D.E. 11–13, 15]. On June 18, 2020, Assistant Federal Public Defender Robert E. Waters filed a notice of appearance and requested discovery. See [D.E. 19, 20].

Waters has practiced law since 2004. From 2004 to 2006, he served as a law clerk for United States District Judge Louise W. Flanagan in the Eastern District of North Carolina. From 2006 to 2011, Waters practiced law with two large law firms in Washington, D.C. In 2011, Waters became an Assistant Federal Public Defender in the Eastern District of North Carolina. He served in that role from 2011 until June 2021, when he left the office.

On June 29, 2020, the court held Odom's detention hearing. See [D.E. 28]. Before the detention hearing, Waters received and reviewed the Pretrial Services Report, which detailed Odom's lengthy criminal history, including numerous gun-related and drug-related guilty pleas. See [D.E. 21]. After the detention hearing, the court detained Odom. See [D.E. 27].

After the detention hearing, Waters requested, received, and reviewed the discovery in the case. He also met with Odom to discuss the case. On August 10, 2020, Odom moved to continue his arraignment to September 2020 [D.E. 30]. On August 11, 2020, the court granted Odom's

2

motion and continued the arraignment until September 24, 2020. See [D.E. 31].

Waters received an unsolicited draft plea agreement from the Assistant United States Attorney ("AUSA"). In Waters's experience in the Eastern District of North Carolina, receiving an unsolicited plea agreement in a one-count section 922(g) case was unusual. Waters met with Odom and discussed the draft plea agreement with Odom. The draft plea agreement recounted the offense, the elements, the statutory penalties, and various obligations of Odom and the United States under the draft plea agreement. The draft plea agreement required Odom, inter alia, to (1) "disclose fully and truthfully in interviews with Government agents information concerning all conduct related to the Indictment and any other crimes of which the Defendant has knowledge, and (2) to testify fully and truthfully in any proceeding." Def. Ex. 16, ¶ 2(i). "These obligations are continuing ones." Id. "The Defendant agrees that all these statements can be used against Defendant at trial if the Defendant withdraws from this plea agreement or is allowed to withdraw the guilty plea." Id. The draft plea agreement also had an appeal waiver as to "the conviction and whatever sentence is imposed," id. ¶ 2(c),[1] and nonbinding recommendations concerning certain Guideline provisions pursuant to Fed. R. Crim. P. 11(c)(1)(B). See id. ¶ 5. The nonbinding Guideline recommendations included, inter alia, (a) not applying any factors under U.S.S.G. §§ 5K2.0 through 5K2.14 for an

---

[1] The appeal waiver stated that the defendant agreed:

c. To waive knowingly and expressly the right to appeal the conviction and whatever sentence is imposed on any ground, including any appeal pursuant to 18 U.S.C. § 3742, and further to waive any right to contest the conviction or the sentence in any post-conviction proceeding, including any proceeding under 28 U.S.C. § 2255, excepting an appeal or motion based upon grounds of ineffective assistance of counsel or prosecutorial misconduct not known to the Defendant at the time of the Defendant's guilty plea. The foregoing appeal waiver does not constitute or trigger a waiver by the United States of any of its rights to appeal provided by law.

Def. Ex. 16, ¶ 2(c).

upward or downward departure; (b) not applying an upward adjustment under U.S.S.G. §§ 3A1.1 through 3A1.3; (c) not applying an upward adjustment or downward adjustment for aggravating or mitigating role under U.S.S.G. § 3B1.1 or § 3B1.2; (d) an upward adjustment of two levels for reckless endangerment during flight under U.S.S.G. § 3C1.2; and (e) applying a downward adjustment for acceptance of responsibility under U.S.S.G. § 3B1.1. See id.

The AUSA told Waters that the United States offered the plea agreement to Odom because the United States wanted Odom's cooperation due to his gang activity. After receiving the plea agreement, Waters met with Odom to review and discuss the plea agreement. During the discussion, Waters explained the plea agreement to Odom, including the charge, the elements, the maximum penalty, and the plea agreement's terms. Waters also explained to Odom that the proposed plea agreement required Odom to cooperate (i.e., "snitch"). Waters also explained how plea agreements and sentencing in federal court were different than in state court. Waters discussed the advisory guidelines, how the advisory guidelines worked, and that the court would determine the advisory guideline range and sentence at the sentencing hearing and could sentence Odom up to the statutory maximum regardless of the advisory guideline range. Waters also told Odom that recommendations in the plea agreement about the advisory guidelines were not binding on the court. Waters also told Odom that he estimated Odom's advisory guideline range would be 27 to 33 months but that Waters's estimate was not binding on the court, that the court could determine a higher advisory guideline range, and that the court could impose a sentence higher than the estimate and up to the statutory maximum. Waters also explained that the plea agreement required Odom to waive his appellate rights as to his conviction and sentence, but if Odom pleaded not guilty or guilty without a plea agreement, then Odom preserved his appellate rights.

4

Odom told Waters that he did not want to snitch, give up his appellate rights, or plead guilty pursuant to the plea agreement. Rather, Odom decided to plead guilty without a plea agreement. After meeting with Odom, Waters told the AUSA that Odom rejected the plea agreement.

Waters did not make a counteroffer concerning a proposed plea agreement without cooperation language because of what the AUSA said in presenting the draft plea agreement and because, in his experience, the U.S. Attorney's Office in the Eastern District of North Carolina did not generally offer plea agreements in one-count section 922(g) cases unless the defendant agreed to cooperate. Waters also did not believe that such an agreement was in Odom's interest due to the broad appellate waiver in any such plea agreement, including a waiver as to "whatever sentence is imposed." Odom's arraignment was scheduled for September 24, 2020.

On September 18, 2020, Waters received a call from a member of Odom's family who stated that the gun's owner had sent an affidavit to the FPD's office stating that she owned the gun, that she mistakenly left the gun in the car, that she mistakenly forgot to retrieve the gun, that Odom was driving his mother's car on July 9, 2019, and that Odom had no knowledge that the gun was in the car. Waters asked the family member for the affidavit but did not receive a copy on September 18, 2020, or at any time during the attorney-client relationship.

After receiving the call, Waters met with Odom on September 21, 2020, to discuss this new information. Waters told Odom that gun ownership was not a required element of the charged offense, but if Odom had no knowledge of the gun, then that would be a defense to the section 922(g)(1) charge in the indictment because the United States had to prove that Odom knowingly possessed the gun. Waters also told Odom that he could get a continuance to give Odom more time to think about whether he wanted to plead not guilty and to allow Waters time to investigate this new

5

information. Water also asked Odom if Odom wanted to plead not guilty and have Waters prepare that case for trial. Odom said no. Odom told Waters that he did not want a continuance, that he wanted to plead guilty without a plea agreement on September 24, 2020, and that he wanted to proceed with his arraignment on September 24, 2020. At no time during this conversation or at any other time during the attorney-client relationship did Odom ever tell Waters that he was innocent of the section 922(g) charge in the indictment (i.e., that he did not knowingly possess the firearm in the indictment or that he did not know about the firearm in the car). During the attorney-client relationship, Odom also never provided Waters any evidence of his innocence.

On September 24, 2020, Odom appeared in court with Waters. During the hearing, Odom consented in writing to proceed in front of United States Magistrate Judge Robert T. Numbers, II. See Rule 11 Tr. [D.E. 58] 14–15. Odom affirmed that he was under oath and that if he answered any question falsely, he could be prosecuted for perjury or making a false statement. See id. at 14. Judge Numbers advised Odom of his rights and the rights that he would be waiving if he pleaded guilty. See id. at 4–7; Fed. R. Crim. P. 11(b)(1). Judge Numbers also told Odom that he could not accept Odom's guilty plea unless Odom admitted in open court that he was guilty of the offense charged. See Rule 11 Tr. at 7. Judge Numbers told Odom that the sentencing guidelines were advisory, that the court would calculate the advisory guideline range at sentencing, that the court would consider any departure or variance motions at sentencing, that the court would consider the factors under 18 U.S.C. § 3553(a) at sentencing, that the court would impose the sentence at sentencing, and that the court could impose the same sentence as if Odom pleaded not guilty and was convicted at trial. See id. at 6–8. Judge Numbers also explained the process that probation would follow to prepare the presentence report ("PSR"), Odom's ability to provide information for the PSR, and Odom's ability

6

to object to the PSR. See id. at 9–10. Judge Numbers also advised Odom of his appellate rights. See id. at 11–12.

During the Rule 11 hearing, Odom affirmed under oath that (1) he had not taken any drugs, medicine, pills, or alcoholic beverages in the last 48 hours; (2) he understood what was happening; (3) he did not need the court to read the indictment to him; (4) he had received the indictment; (5) he had discussed his case with his attorney; (6) he was completely and fully satisfied with his attorney's legal services; and (7) he had no questions about his trial rights or the consequences of pleading guilty. See id. at 12–13. During the Rule 11 hearing, Odom also stated that he was 25 years old, had completed the tenth grade, could speak and understand English, had heard and understood all the rights he had, and had heard and understood all questions asked to the defendants as a group. See id. at 15–16.

Both Odom's counsel and the AUSA told Judge Numbers that Odom was competent to enter a plea. See id. at 16. Judge Numbers advised Odom of the charge in the indictment, the elements of the charge, and the maximum and minimum penalties concerning the charge. See id. at 16–17. Odom affirmed that he understood the charge, elements, and penalties. See id. at 17. Odom also affirmed that he had heard and understood all of the rights that he would be giving up if he pleaded guilty, and the court accepted his guilty plea. See id. at 17–18. Odom also affirmed that he had discussed the charge in the indictment with his attorney, he understood the charge, and that he understood that if he pleaded not guilty, then the United States would have to prove the charge to a jury beyond a reasonable doubt. See id. at 18. Odom also affirmed that he had spoken with his attorney about sentencing in federal court. See id. Judge Numbers advised Odom that at the sentencing hearing, the court would calculate the advisory guideline range, consider any departure

7

or variance motions, consider the sentencing factors under 18 U.S.C. § 3553(a), and impose the sentence. See id. Judge Numbers also told Odom that his attorney's calculation of an estimated advisory guideline range or sentence was not binding on the court. See id. at 18–19. Odom also told Judge Numbers that nobody had forced him or threatened him to plead guilty. See id. at 19. Odom also told Judge Numbers that nobody had promised him anything to get him to plead guilty. See id.

Odom's counsel affirmed that he had conveyed the one plea offer from the United States to Odom, that he discussed the plea offer with Odom, that Odom rejected the plea offer, and that there would be no benefit to allowing the parties additional time to discuss a potential plea agreement. See id. at 19–20. Odom told Judge Numbers that he did not want any additional time to enter into a plea agreement. See id. at 20. The AUSA also told Judge Numbers that she did not believe that there was any benefit to additional time to negotiate a plea agreement. See id.

Judge Numbers confirmed with Odom that Odom understood that even though he was pleading guilty, the court could still sentence Odom to the maximum sentence allowed under the statute of conviction. See id. Odom also confirmed that he understood that if the court imposed such a maximum sentence, Odom would not have the right to withdraw his guilty plea. See id.

Odom confirmed to Judge Numbers that the charge was a felony, that Odom understood the maximum and minimum penalties for the charged offense, and that if he pleaded guilty and the court accepted the plea, then he would not be allowed to withdraw the guilty plea. See id. at 20–21. Odom also confirmed that he understood that he still had the right to plead not guilty, to persist in that plea, and to enjoy all of the trial rights discussed during the hearing. See id. at 21. Odom also confirmed that he was fully satisfied with his attorney's representation. See id.

Judge Numbers then reviewed the four elements of the charged offense with Odom, including

**8**

Odom's knowing possession of the firearm on July 9, 2019. See id. at 21–22. Odom stated that he understood the four elements. See id. at 22.

The AUSA summarized what the United States would prove if the matter proceeded to trial. See id. at 22–24. The AUSA stated that a Raleigh police officer in a marked patrol car observed Odom speeding. The officer ran the car's license plate on the patrol car computer. The car's license plate returned an address associated with Odom, and the computer reflected that Odom had an outstanding arrest warrant in Nash County. See id. at 22. The officer activated his blue lights and made a traffic stop. See id. at 22–23. Odom was the only person in the car. The officer identified himself, told Odom about the outstanding warrant, and asked Odom to step out of the car to be arrested. See id. at 23. The officer smelled marijuana and observed Odom reaching for the gearshift. See id. The officer opened the car door to attempt to remove Odom. See id. Odom resisted and assaulted the officer. See id. Odom then put the car in gear and fled at a high rate of speed. See id. In accordance with Raleigh Police Department policy, the officer did not chase Odom. See id.

The AUSA stated that during Odom's high speed flight in a residential neighborhood, Odom crashed the car he was driving into another car. Odom abandoned the car and fled on foot. See id.

The AUSA stated that officers responded to the wreck and observed an open tequila bottle in plain view in the car. Officers also smelled marijuana in the car. Based on the marijuana smell, officers had probable cause to search the abandoned car. See id. The officers also conducted an inventory search of the car. Officers discovered a small bag of marijuana in the center console and a Taurus TH40 semiautomatic pistol in the side foot well of the car by the pedals. See id.

The AUSA stated that before July 9, 2019, Odom had been convicted of a felony offense and knew on July 9, 2019, that he had been convicted of a felony offense. See id. at 24. An ATF nexus

9

examiner examined the firearm and determined that the .40 caliber pistol was manufactured outside North Carolina and had traveled in interstate commerce. See id.

Judge Numbers asked Odom if Odom had any response to the factual basis. See id. Odom's counsel said no. See id. Judge Numbers then asked Odom how he pleaded to the sole count in the indictment charging Odom with being a felon in possession of a firearm on July 9, 2019. See id. Odom responded, "Guilty." Id. Judge Numbers then asked Odom, "Did you, in fact, commit the offense charged in the count?" Id. Odom replied, "Yes, sir." Judge Numbers then asked, "And are you pleading guilty today of your own free will because you are, in fact, guilty?" Id. at 24–25. Odom replied, "Yes, sir." Id. at 25.

Judge Numbers then found that Odom freely and voluntarily entered his guilty plea, that Odom was fully competent and had a full and complete understanding of the charge and the penalties, and that an independent factual basis supported each element of the charge. See id. at 25. Judge Numbers accepted the guilty plea, advised Odom about the PSR process, and remanded Odom to custody. See id. at 25–26.

On October 20, 2020, the probation officer circulated a draft PSR to the parties. See [D.E. 37]. The draft PSR had an advisory guideline range of 84 to 105 months, including proposed enhancements under U.S.S.G. § 3A1.2(c)(1), § 2K2.1(b)(6)(B), and § 3C1.2. See id. ¶¶ 57–58, 60, 67. On November 3, 2020, Odom (through counsel) moved to extend time to object to the PSR. See [D.E. 38]. On November 4, 2020, the court granted Odom's motion, set a deadline for objections of December 3, 2020, and rescheduled the sentencing for January 2021. See [D.E. 40].

On December 3, 2020, Odom (through counsel) filed objections to the PSR, including the proposed enhancements under U.S.S.G. § 3A1.2(c)(1) and § 2K2.1(b)(6)(B), but did not include an

10

objection that Odom wanted to make concerning U.S.S.G. § 3C1.2. See [D.E. 41]. Waters did not believe an objection to the proposed enhancement under U.S.S.G. § 3C1.2 was colorable. On December 10, 2020, the probation office circulated another draft PSR. See [D.E. 42]. The draft PSR had an advisory guideline range of 84 to 105 months' imprisonment and preserved Odom's objections concerning U.S.S.G. § 3A1.2(c)(1) and § 2K2.1(b)(6)(B). See id. ¶ 63, Add. ¶¶ 1, 3.

On December 23, 2020, the court set the sentencing hearing for January 12, 2021. See [D.E. 44]. On January 8, 2021, the court reset the sentencing hearing for the February 2021 term of court due to transport issues arising from COVID-19. See [D.E. 45]. On January 14, 2021, the court set the sentencing hearing for February 17, 2021. See [D.E. 46].

On February 8, 2021, Odom (through counsel) moved to continue the sentencing hearing in order for more time to prepare. See [D.E. 47]. On February 9, 2021, the court granted the motion and continued the sentencing hearing to the March 2021 term of court. See [D.E. 48].

On March 3, 2021, the court set Odom's sentencing hearing for March 25, 2021. See [D.E. 49]. On March 15, 2021, Odom wrote a letter to the court and requested to continue the sentencing hearing. See [D.E. 53]. In the letter, Odom stated:

> I, Ny'keem Odom am writing you today to address a few concerns that I have with my current appointed counsel. Since we've both been diagnosed with Covid-19, our communication has been minimal. Furthermore, when we were able to communicate we could never find a common ground and/or solution to my concerns I have requested 3 objections to be filed yet only two were filed. In summary, we have yet to see eye to eye, and I don't believe my current appointed counsel has my best interest at heart. I would like to terminate my current counsel before this process goes any further. Its not my intent to impede the judicial process, but I don't want to be rushed to judgement either. Thank you for your time and consideration[.]

Id. With respect to the objections, Odom was upset that Waters did not object to the proposed enhancement in the draft PSR under U.S.S.G. § 3C1.2.

On March 22, 2021, Waters moved to withdraw as counsel and to continue the sentencing hearing. See [D.E. 50]. Waters stated "that the communication and attorney-client relationship between Mr. Odom and defense counsel has deteriorated to the point that a functional and effective attorney-client relationship is no longer possible." Id.

On March 23, 2021, the court granted Waters's motion to withdraw and continued the sentencing to May 2021. See [D.E. 51]. On March 23, 2021, Odom's current appointed counsel filed a notice of appearance. See [D.E. 52].

On April 19, 2021, Odom's new counsel moved to continue Odom's sentencing. See [D.E. 55]. The motion said nothing about innocence. See id. On April 20, 2021, the court granted the motion to continue the sentencing, continued the sentencing to July 2021, and extended the deadline to object to the PSR to June 1, 2021. See [D.E. 56].

On May 28, 2021, Odom moved to withdraw his guilty plea. See [D.E. 59]. On June 1, 2021, Odom (through counsel) submitted objections to the PSR. See [D.E. 63]. On June 14, 2021, the United States responded in opposition to Odom's motion to withdraw the guilty plea. See [D.E. 64].

On June 22, 2021, probation circulated another draft PSR. See [D.E. 66]. The draft PSR removed the proposed enhancement under U.S.S.G. § 2K2.1(b)(6)(B) and had an advisory guideline range of 57 to 71 months. See id. ¶ 64. On July 6, 2021, Odom (through counsel) submitted objections to the revised draft PSR. See [D.E. 70]. On July 12, 2021, probation circulated another draft PSR. See [D.E. 72]. The draft PSR had an advisory guideline range of 57 to 71 months. See id. ¶ 64.

On July 19, 2021, the court set the motion for withdrawal hearing for July 23, 2021. See

[D.E. 80]. On July 23, 2021, the court held a hearing on the motion for withdrawal. See [D.E. 83]. On August 2, 2021, the United States made a supplemental filing and notice. See [D.E. 88]. On August 11, 2021, Odom made a supplemental filing. See [D.E. 91]. Odom's supplemental filing reflects that Waters met with Odom at the Wake County Detention Center on July 31, 2020, from "1145–1156," on August 20, 2020, from "1421 to 142 ," and on September 21, 2020, from "1534–1552." See [D.E. 91-1] 6. On August 19, 2021, Odom made an additional supplemental filing. See [D.E. 92]. According to Odom's supplemental filing, Waters visited Odom three times at the Wake County Detention Center "for a total of 37 minutes, more or less, before Odom pleaded guilty." See id. at 1. However, the time that Waters spent visiting with Odom at the Wake County Detention Center before Odom's guilty plea does not include the time they spent together on the day of Odom's guilty plea or the time that Waters spent working on the case.

## II.

A valid guilty plea constitutes an admission of all material elements of a crime. See McCarthy v. United States, 394 U.S. 459, 466–67 (1969); United States v. Bowman, 348 F.3d 408, 414 (4th Cir. 2003); United States v. Willis, 992 F.2d 489, 490 (4th Cir. 1993). "[A] properly conducted Rule 11 guilty plea colloquy leaves a defendant with a very limited basis upon which to have his plea withdrawn." United States v. Nicholson, 676 F.3d 376, 384 (4th Cir. 2012) (quotation omitted). "Indeed, it raises a strong presumption that the plea is final and binding." Id. (quotation and alteration omitted).

A defendant seeking to withdraw a guilty plea after the court accepts the plea, but before sentencing, must "show a fair and just reason for requesting the withdrawal." Fed. R. Crim. P. 11(d)(2)(B); see Nicholson, 676 F.3d at 384–85; United States v. Benton, 523 F.3d 424, 434 (4th

Cir. 2008); United States v. Battle, 499 F.3d 315, 318–22 (4th Cir. 2007); United States v. Dyess, 478 F.3d 224, 237 (4th Cir. 2007); Bowman, 348 F.3d at 413–17; United States v. Ubakanma, 215 F.3d 421, 424 (4th Cir. 2000); United States v. Sparks, 67 F.3d 1145, 1153–54 (4th Cir. 1995); United States v. Lambert, 994 F.2d 1088, 1093 (4th Cir. 1993); United States v. Lambey, 974 F.2d 1389, 1394–96 (4th Cir. 1992) (en banc); United States v. McHan, 920 F.2d 244, 247 (4th Cir. 1990); United States v. Pitino, 887 F.2d 42, 46 (4th Cir. 1989); United States v. DeFreitas, 865 F.2d 80, 82 (4th Cir. 1989). "The most important consideration in resolving a motion to withdraw a guilty plea is an evaluation of the Rule 11 colloquy at which the guilty plea was accepted." Bowman, 348 F.3d at 414.

In analyzing whether a defendant has met his burden of proof, a court must consider six factors: (1) whether the defendant provided credible evidence that his plea was not knowing or voluntary; (2) whether the defendant credibly asserted his legal innocence; (3) whether there was a delay between entering the plea and moving for withdrawal; (4) whether the defendant had the close assistance of competent counsel; (5) whether withdrawal will prejudice the government; and (6) whether withdrawal will inconvenience the court and waste judicial resources. See Nicholson, 676 F.3d at 384–85; United States v. Moore, 931 F.2d 245, 248 (4th Cir. 1991).

## A.

As for the first factor, Odom has not presented credible evidence that his guilty plea was not knowing or voluntary. Judge Numbers conducted a thorough Rule 11 proceeding and ensured that Odom was competent. Judge Numbers also ensured that Odom understood all that Federal Rule of Criminal Procedure 11(b)(1)(A)–(M) requires and thereby ensured that the plea was knowing.[2]

---

[2] Fed. R. Crim. P. 11(b)(1)(A)–(M) provides:

14

Judge Numbers also ensured that Odom's plea was voluntary and did not result from force, threats, or promises. See Fed. R. Crim. P. 11(b)(2). Thus, the first factor does not favor permitting withdrawal. See Benton, 523 F.3d at 434–35; Ubakanma, 215 F.3d at 424; Pitino, 887 F.2d at 48.

## B.

As for the second factor, Odom has not credibly asserted his legal innocence. See Nicholson, 676 F.3d at 384; Bowman, 348 F.3d at 413–15; Ubakanma, 215 F.3d at 424–25; Sparks, 67 F.3d at

---

(b) Considering and Accepting a Guilty or Nolo Contendere Plea.
(1) Advising and Questioning the Defendant. Before the court accepts a plea of guilty or nolo contendere, the defendant may be placed under oath, and the court must address the defendant personally in open court. During this address, the court must inform the defendant of, and determine that the defendant understands, the following:
(A) the government's right, in a prosecution for perjury or false statement, to use against the defendant any statement that the defendant gives under oath;
(B) the right to plead not guilty, or having already so pleaded, to persist in that plea;
(C) the right to a jury trial;
(D) the right to be represented by counsel—and if necessary have the court appoint counsel—at trial and at every other stage of the proceeding;
(E) the right at trial to confront and cross-examine adverse witnesses, to be protected from compelled self-incrimination, to testify and present evidence, and to compel the attendance of witnesses;
(F) the defendant's waiver of these trial rights if the court accepts a plea of guilty or nolo contendere;
(G) the nature of each charge to which the defendant is pleading;
(H) any maximum possible penalty, including imprisonment, fine, and term of supervised release;
(I) any mandatory minimum penalty;
(J) any applicable forfeiture;
(K) the court's authority to order restitution;
(L) the court's obligation to impose a special assessment;
(M) in determining a sentence, the court's obligation to calculate the applicable sentencing-guideline range and to consider that range, possible departures under the Sentencing Guidelines, and other sentencing factors under 18 U.S.C. § 3553(a); . . . .

Fed. R. Crim. P. 11(b)(1)(A)–(M).

Case 5:20-cr-00149-D Document 93 Filed 08/23/21 Page 15 of 28

1153–54. On September 24, 2020, Judge Numbers conducted a thorough Rule 11 proceeding. Odom was competent, and his guilty plea was knowing and voluntary. During the Rule 11 proceeding, the AUSA provided a thorough factual basis concerning each essential element of the charged offense. The factual basis element "ensures that the court makes clear exactly what a defendant admits to, and whether those admissions are factually sufficient to constitute the alleged crime." United States. v. Moussaoui, 591 F.3d 263, 299–300 (4th Cir. 2010) (quotation omitted). As part of the factual basis, the AUSA recounted the traffic stop on July 9, 2019, the crash, and Odom's flight. The AUSA also recounted the recovery of the firearm from the side foot well by the pedals, Odom's knowledge of his prior felony conviction, and the interstate nexus. Odom then pleaded guilty to the charged offense and told Judge Numbers under oath that he was guilty and had committed the charged crime. Odom's "[s]olemn declarations in open court carry a strong presumption of veracity." Blackledge v. Allison, 431 U.S. 63, 74 (1977). Moreover, even in Odom's March 15, 2021 letter to the court complaining about Waters's decision to file two out of three objections to the PSR, Odom did not proclaim his innocence. See [D.E. 53]. Furthermore, Waters credibly testified at the hearing on the motion to withdraw that Odom never expressed his innocence to Waters while Waters represented him. Odom first claimed innocence to this court in his motion to withdraw his guilty plea on May 28, 2021. See [D.E. 59].

In support of Odom's motion to withdraw his guilty plea, Odom submitted a declaration dated May 19, 2021, and claimed that he told Waters "that I did not know the gun was in my mother's car on July 9, 2019 and my girlfriend took an affidavit signed by the owner of the gun to Mr. Waters's office." [D.E. 60-1] ¶ 1. Odom's claim in his declaration that he told Waters "that I did not know the gun was in my mother's car on July 9, 2019" is untrue and perjurious. At the

hearing on Odom's motion to withdraw his guilty plea, Waters credibly testified that Odom never told Waters that he did not know the gun was in his mother's car on July 9, 2019. If he had made that statement to Waters, then Waters would have advised him to plead not guilty and to go to trial. In making this credibility determination, the court has considered Waters's "demeanor and tone of voice," which was calm and matter of fact. Anderson v. Bessemer City, 470 U.S. 564, 575 (1985). The court also has considered whether Waters had a motive to lie and the level of detail in his testimony. See id. As an experienced criminal defense lawyer, Waters had no motive to lie, gave credible testimony, and would have advised Odom to plead not guilty if Odom had ever told him that Odom did not know the gun was in Odom's mother's car on July 9, 2019. Odom never told Waters "that I did not know the gun was in my mother's car on July 9, 2019." Instead, Odom told Waters that he was guilty and wanted to plead guilty.

In proclaiming his innocence, Odom also relies on two inconsistent declarations from Korwana Mattocks. See [D.E. 60-2]; Def. Ex. 2. In the first declaration (dated May 1, 2020), Mattocks claims that she rode in Odom's mother's car with Odom's mother and left her Taurus .40 caliber gun under the driver seat of the car on July 5, 2019, and that neither Odom nor his mother was aware of the gun. See [D.E. 60-2]. In the second declaration (dated July 16, 2021), Mattocks claims that "[o]n July 8, 2019, I met my friend Shelli Odom and we went out for a night in her car, a Black BMW." Def. Ex. 2, ¶ 3. "I took my pistol with me and left it under my seat. I drove Shelli's car later in the evening. I returned to my home early on July 9, 2019, and forgot I had left my gun under my seat." Id. "When I called Shelli to tell her, she advised it was too late, as the police had already arrested Nykeem, who was driving Shelli's car where the gun was found." Id. "Nykeem Odom did not know that my gun was in Shelli's car when he drove Shelli's car on July 9,

17

2019." Id. ¶ 4. "I did not tell him. I regret leaving the gun in Shelli's car. Nykeem Odom did not handle the gun at any time as far as I know." Id.

Mattocks's declarations do not constitute credible evidence of Nykeem Odom's innocence. First, the declarations conflict concerning the date when Mattocks allegedly went out with Nykeem Odom's mother and left the gun in the car (i.e., July 5 versus July 8). Second, the declarations conflict concerning where Mattocks allegedly left the gun (i.e., under the driver's seat on July 5 versus "under my seat" on July 8). The reference to "my seat" suggests the passenger seat given that Mattocks and Shelli Odom were in Shelli Odom's car. Third, and most importantly, Mattocks cannot testify about Nykeem Odom's knowledge or possession of the firearm. As mentioned, Waters credibly testified that Odom never proclaimed his innocence to Waters during their attorney-client relationship. Rather, Nykeem Odom acknowledged his guilt to the charged crime to Waters and to Judge Numbers. Even if Mattocks mistakenly left the firearm in Shelli Odom's car, that fact does not mean that Nykeem Odom did not possess the gun on July 9, 2019, as Nykeem Odom swore that he did when he pleaded guilty. Notably, the police did not recover the gun in the location where Mattocks claims she left it (i.e., under either the driver's seat or the passenger seat). Rather, the police recovered the gun in the side foot well of the car near the pedals. On this record, the second factor does not favor withdrawal.

## C.

As for the third factor, there was a delay of over eight months between Odom entering his plea of guilty and moving for withdrawal. Odom pleaded guilty on September 24, 2020. See [D.E. 58]. Odom did not move to withdraw his guilty plea until May 28, 2021. See [D.E. 59]. This long delay does not favor permitting withdrawal. See Nicholson, 676 F.3d at 384 (two-month delay does

18

not favor permitting withdrawal); Sparks, 67 F.3d at 1150–54 (seven-month delay does not favor permitting withdrawal); Moore, 931 F.2d at 248 (six-week delay does not favor permitting withdrawal).

## D.

As for the fourth factor, Odom had the close assistance of competent counsel. In order to prove that Odom did not have the close assistance of competent counsel, Odom "must show (1) that his counsel's action fell below an objectively reasonable standard, and (2) that but for the attorney's errors, it is reasonably probable that the defendant would have chosen to face trial rather than plead guilty." Dyess, 478 F.3d at 237–38. In assessing counsel's performance, a court must strongly presume that counsel "rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment, and that the burden to show" deficient performance and prejudice rests squarely with defendant. Burt v. Titlow, 571 U.S. 12, 17 (2013) (quotation and citation omitted); see Strickland, 466 U.S. at 687–91. When determining whether counsel's representation was objectively unreasonable, a court must be "highly deferential" to counsel's performance and must attempt to "eliminate the distorting effects of hindsight." Strickland, 466 U.S. at 689. Therefore, the "court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id.

"Surmounting Strickland's high bar is never an easy task." Padilla v. Kentucky, 559 U.S. 356, 371 (2010). The "strong societal interest in finality has special force with respect to convictions based on guilty pleas." Lee v. United States, 137 S. Ct. 1958, 1967 (2017) (quotation omitted). "Courts should not upset a plea solely because of post hoc assertions from a defendant about how he would have pleaded but for his attorney's deficiencies." Id. "Judges should instead look at the

19

contemporaneous evidence to substantiate a defendant's expressed preferences." Id.

The contemporaneous evidence demonstrates that Waters provided Odom the close assistance of competent counsel and that Odom pleaded guilty because he was guilty. As mentioned, Waters entered his notice of appearance on June 18, 2020. See [D.E. 19]. Waters represented Odom from that date until the court granted Waters's motion to withdraw on March 23, 2021. See [D.E. 51]. During the representation, Waters requested, received, and reviewed discovery from the United States. Waters met with Odom on three occasions at the Wake County Detention Center to discuss the case before Odom pleaded guilty. During the discussions, Waters explained the proposed plea agreement, elements of the offense, the penalties, and the sentencing process in federal court, including the advisory guideline system, that the court would calculate the advisory guideline range and determine the sentence at sentencing, and that the court could sentence Odom up to the statutory maximum. Waters also explained to Odom that Waters's estimate of an advisory guideline range of 27 to 33 months' imprisonment was not binding on the court, that the court could sentence Odom outside that range, and that the court could sentence Odom up to the statutory maximum. After discussing the proposed plea agreement with Waters, Odom decided to reject it and to plead guilty without a plea agreement. At no time during the representation did Odom ever tell Waters that he was innocent (i.e., that he did not knowingly possess the firearm) or wanted to plead not guilty, including after their discussion on September 21, 2020, about the owner of the gun and her claim that Odom knew nothing about the gun.

As mentioned, on September 21, 2020, Waters met with Odom and discussed this new information about the gun's owner. During that meeting, Waters told Odom about the phone call, discussed the elements of the offense, and told Odom that Waters could get a continuance of the

20

impending arraignment in order to investigate the issue and to give Odom more time to decide how to plead. Waters also asked if he wanted to plead not guilty and have Waters prepare the case for trial. Odom said no. Odom understood Waters's advice, but told Waters that he was guilty and wanted to proceed with his scheduled hearing on September 24, 2020.

On September 24, 2020, Waters met with Odom before Odom's Rule 11 hearing, and Odom did not tell Waters that he wanted a continuance or to plead not guilty. Instead, Odom told Waters he wanted to plead guilty. In light of the record, Waters's entire representation of Odom to that point, and Odom's acknowledgment of his guilt, Waters could rely on Odom's preference to plead guilty. Cf. Strickland, 466 U.S. at 691 (The "reasonableness of counsel's actions may be determined or substantially influenced by the defendant's own statements or actions. Counsel's actions are actually based, quite properly, on informed strategic choices made by the defendant and on information supplied by the defendant.").

In opposition, Odom attacks Waters's performance. First, Odom argues that if Waters had received and reviewed the bodycam and dashcam footage from the traffic stop and search for Odom, then Waters could have filed a motion to suppress the evidence found in the abandoned car under the theory that the Raleigh Police Department conducted an improper inventory search. The court, however, has reviewed the bodycam and dashcam footage that Odom submitted. See Def. Ex. 11. The footage comports with the officer's claim that he initiated a traffic stop for perceived speeding and for an outstanding arrest warrant for Odom. See id. The footage also confirms Odom's resistence, high-speed flight from the traffic stop, crash, and abandonment of the car. See id.

Filing a motion to suppress would have been futile, and the Sixth Amendment did not require Waters to file a futile motion or make a baseless argument. See, e.g., Knowles v. Mirzayance, 556

21

U.S. 111, 124–27 (2009). Indeed, the Sixth Amendment did not require Waters to make every colorable argument. See id. A motion to suppress on Odom's new theory would have been baseless. After all, Odom voluntarily abandoned the car and fled on foot, thereby forfeiting any reasonable expectation of privacy in the car or its contents. See United States v. Small, 944 F.3d 490, 501–04 (4th Cir. 2019); United States v. Kirlew, 291 F. App'x 536, 538–39 (4th Cir. 2008) (per curiam) (unpublished); see also California v. Hodari D., 499 U.S. 621, 629 (1991) (a person has no reasonable expectation of privacy in abandoned property); Abel v. United States, 362 U.S. 217, 241 (1960) (same); United States v. Stevenson, 396 F.3d 538, 546–47 (4th Cir. 2005) (same); United States v. Basinski, 226 F.3d 829, 836–37 (7th Cir. 2000) (same); United States v. Leshuk, 65 F.3d 1105, 1111 (4th Cir. 1995) (same); United States v. Clark, 891 F.2d 501, 506 (4th Cir. 1989) (same). Thus, the officers did not need probable cause to search the car.

Alternatively, the Raleigh Police Department had probable cause to search the car based on the odor of marijuana emanating from the car during the traffic stop and after Odom abandoned the car. See, e.g., United States v. White, 836 F.3d 437, 441–42 (4th Cir. 2016), abrogated in part on other grounds by United States v. Stitt, 139 S. Ct. 399, 404–08 (2018); United States v. Palmer, 820 F.3d 640, 650 (4th Cir. 2016); United States v. Lewis, 606 F.3d 193, 198 (4th Cir. 2010); United States v. Humphries, 372 F.3d 653, 658 (4th Cir. 2004); United States v. Carter, 300 F.3d 415, 422 (4th Cir. 2002). That probable cause permitted the police to search the car at the scene or at the police station. See, e.g., Florida v. Meyers, 466 U.S. 380, 382 (1984) (per curiam); Texas v. White, 423 U.S. 67, 68 (1975) (per curiam); Chambers v. Maroney, 399 U.S. 42, 52 (1970); United States v. Caldwell, No. 19-4019, 2021 WL 3356951, at *3–4 (4th Cir. Aug. 3, 2021); United States v. Gastiaburo, 16 F.3d 582, 586–87 (4th Cir. 1994).

Alternatively, even if Odom could overcome his abandonment of the car or the probable cause arising from the odor of marijuana, no evidence suggests that the Raleigh Police Department improperly conducted an inventory search of the car. A proper inventory search does not require a warrant or probable cause. See South Dakota v. Opperman, 428 U.S. 364, 374–76 (1976). A proper inventory search is merely an administrative step that helps, inter alia, to protect the police from false accusations of theft. See id.; Illinois v. Lafayette, 462 U.S. 640, 644–46 (1983); United States v. Murphy, 552 F.3d 405, 412–13 (4th Cir. 2009), abrogated on other grounds by Riley v. California, 573 U.S. 373 (2014); United States v. Banks, 482 F.3d 733, 739 (4th Cir. 2007). Furthermore, that the Raleigh Police Department conducted the inventory search at the police station after removing the abandoned car from the roadway does not violate the Fourth Amendment. See Lafayette, 462 U.S. at 645–46; Murphy, 552 F.3d at 412–13; United States v. Colclough, 549 F.2d 937, 940 (4th Cir. 1977). Thus, Waters did not render ineffective assistance of counsel by not filing a baseless motion to suppress.

Odom also argues that Waters performed deficiently by failing to investigate Odom's cognitive impairments and competence to enter a plea. Waters, however, could rely on his own interactions with Odom and conclude that Odom was competent to knowingly and voluntarily enter a plea. Cf. Drope v. Missouri, 420 U.S. 162, 171–79 (1975); Dusky v. United States, 362 U.S. 402, 402 (1960) (per curiam). Waters also had Odom's criminal history and could rely on the fact that no court had ever found Odom incompetent.

Odom also argues that Waters rendered ineffective assistance of counsel by not communicating the plea agreement to Odom. See [D.E. 60] 5. The Sixth Amendment required Waters to communicate any plea offer to Odom. See Missouri v. Frye, 566 U.S. 134, 149–51 (2012).

23

Under Frye, in order to show prejudice where a plea offer has been rejected or lapsed due to counsel's deficient performance, a defendant proves prejudice by showing "a reasonable probability that [he] would have accepted the earlier plea offer had [he received] effective assistance of counsel" and that the "end result of the criminal process would have been more favorable by reason of plea to a lesser charge or a sentence of less prison time." Id. at 147; see Lafler v. Cooper, 566 U.S. 156, 173–75 (2012); Hill v. Lockhart, 474 U.S. 52, 59 (1985) (the Strickland prejudice requirement "focuses on whether counsel's constitutionally ineffective performance affected the plea process.").

Waters credibly testified that he conveyed the plea agreement to Odom and discussed the plea agreement with Odom. After presenting the plea agreement to Odom and extensively discussing it, Odom told Waters that he would not cooperate (i.e., snitch), did not want to waive his appellate rights, rejected the plea agreement, and wanted to plead guilty without a plea agreement. Waters, in turn, told the AUSA that Odom rejected the plea agreement. On this record, Waters did not render deficient performance. See Frye, 566 U.S. at 149–51; Hill, 474 U.S. at 56–60.[3]

Odom also claims that Waters rendered ineffective assistance by not identifying the potential six-level enhancement under U.S.S.G. § 3A1.2(c)(1) or four-level enhancement under U.S.S.G. § 2K2.1(b)(6)(B) before Odom pleaded guilty. See [D.E. 60] 5–6. However, before Odom rejected

_____

[3] To the extent Odom argues that meeting with Waters for 37 minutes on three occasions at the Wake County Detention Center before Odom pleaded guilty means that Waters rendered constitutionally ineffective performance, see [D.E. 92], [D.E. 92-1] 3, the court rejects the argument. The argument ignores the time spent reviewing the discovery and working on the case independent of those three meetings. The argument also ignores the meeting on September 24, 2020. More fundamentally, the argument ignores that a lawyer is presumed to have rendered effective assistance, that a party asserting an ineffective assistance claim must demonstrate a constitutional violation, and that simply attacking the amount of time that Waters met with Odom at the Wake County Detention Center before Odom's guilty plea in this straightforward case does not suffice to show constitutionally ineffective performance. See, e.g., United States v. Cronic, 466 U.S. 648, 662–67 (1984).

24

the plea agreement and pleaded guilty, Waters explained to Odom that the guidelines were advisory, that (unlike in state court) Waters could not guarantee what Odom's advisory guideline range or sentence would be, that the court would determine Odom's advisory guideline range and sentence during the sentencing hearing, and that even if Odom received a statutory maximum sentence, Odom would not be able to withdraw his guilty plea if he pleaded guilty. Waters also provided his own nonbinding estimate of an advisory guideline range of 27 to 33 months, which did not include an enhancement under either U.S.S.G. § 3A1.2(c)(1) or § 2K2.1(b)(6)(B). Indeed, Odom admits that Waters told him that Waters's 27 to 33 month estimate was not binding on the court and that the court could sentence Odom outside that range. See [D.E. 60-1] ¶ 2. Waters's advice complied with the Sixth Amendment, and the Sixth Amendment did not require Waters to identify to Odom potential enhancements under U.S.S.G. § 3A1.2(c)(1) or § 2K2.1(b)(6)(B). See Lambert, 994 F.2d at 1093; Lambey, 974 F.2d at 1394–96.

Alternatively, the court does not credit Odom's prejudice claim arising from Waters's decision to not discuss possible enhancements under U.S.S.G. § 3A1.2(c)(1) and § 2K2.1(b)(6)(B) when discussing the plea agreement. See [D.E. 60-1] ¶ 6. Specifically, Odom now claims that if Waters had discussed these possible enhancements (including the government's non-binding recommendation to not seek an enhancement under U.S.S.G. § 3A1.2(c)(1)), then Odom would not have pleaded guilty and would have gone to trial due to his alleged lack of knowledge about the gun in the car. See id.

The alleged enhancements are not connected to Odom's now-proclaimed, incredible alleged lack of knowledge about the gun in the car. As mentioned, at no time during Waters's representation of Odom did Odom ever proclaim his innocence to Waters (i.e., claim that he did not have

25

knowledge that the gun was in the car). Rather, after Waters reviewed the discovery and fully advised Odom of the charge, the penalties, the advisory guideline system, and the plea agreement, Odom rejected the plea agreement, decided to plead guilty without a plea agreement, and pleaded guilty. Moreover, Odom swore under oath during the thorough Rule 11 proceeding that he was guilty of the charged crime. On this record, even if the Sixth Amendment required Waters to discuss possible enhancements under U.S.S.G. § 3A1.2(c)(1) and § 2K2.1(b)(6)(B), Odom still would have pleaded guilty without a plea agreement. Accordingly, Odom has not proven "but for counsel's [alleged] unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694; see Frye, 566 U.S. at 147; Hill, 474 U.S. at 59.

In opposition, Odom cites United States v. Mayhew, 995 F.3d 171 (4th Cir. 2021). In Mayhew, a defendant claimed his lawyer told him that he was "certain" to receive a sentence of between two and five years if convicted at trial. The defendant relied on this advice, rejected a plea offer to a single charge with a five-year statutory maximum, went to trial on multiple charges, was convicted, and received a 320-month sentence. See Mayhew, 995 F.3d at 175, 178. Unlike in Mayhew, Waters never promised Odom what his sentence would be and always made clear that the Guidelines were advisory, that the court would determine the advisory guideline range and the sentence at sentencing, that Waters's estimate of a 27 to 33 month advisory guideline range was not binding on the court, that the court could sentence outside that range, and that the court could sentence Odom up to the statutory maximum. This advice complied with the Sixth Amendment and defeats any claim as to performance or prejudice. See Lambert, 994 F.2d at 1093; Lambey, 974 F.2d at 1394–96.

As for Odom's complaints about U.S.S.G. § 3A1.2(c)(1) and § 2K2.1(b)(6)(B), before

withdrawing from representation, Waters objected to those two enhancements in the draft PSR. See [D.E. 41]. Moreover, after Waters objected, the probation officer removed from the draft PSR the proposed enhancement under U.S.S.G. § 2K2.1(b)(6)(B). See [D.E. 66]. Thus, any issue concerning U.S.S.G. § 2K2.1(b)(6)(B) is moot. Furthermore, the parties continue to disagree about the enhancement under U.S.S.G. § 3A1.2(c)(1), and the court will address that issue at sentencing. See id. However, even if the court overrules Odom's objection to the enhancement under U.S.S.G. § 3A1.2(c)(1), Odom faces no greater exposure than Waters and the court advised him about before Odom rejected the plea agreement and pleaded guilty. Thus, there was no deficient performance or prejudice. See, e.g., Lambert, 994 F.2d at 1093; Lambey, 974 F.2d at 1394–96. Accordingly, the fourth factor does not favor withdrawal.

### E.

As for the fifth factor, withdrawal will prejudice the United States. Odom is a validated member of the Crips with a lengthy criminal history involving firearms and illegal drugs. During the Rule 11 hearing in September 2020, Odom admitted under oath that he committed the charged crime. After receiving a PSR with a higher advisory guideline range than he had hoped and after Waters declined to file an objection under U.S.S.G. § 3C1.2, Odom expressed displeasure with Waters in March 2021. Thereafter, the court permitted Waters to withdraw. Over two months later, with new counsel, Odom wants to restart the clock in this long-pending case, withdraw his guilty plea, and go to trial. To permit Odom to do so would prejudice the United States.

### F.

As for the sixth factor, withdrawal will inconvenience the court and waste judicial resources. See Nicholson, 676 F.3d at 384–85; Bowman, 348 F.3d at 417. Judge Numbers conducted a

thorough Rule 11 proceeding, and Odom told the truth when he pleaded guilty during the Rule 11 hearing on September 24, 2020. Odom moved to withdraw his guilty plea over eight months after pleading guilty, after being disappointed in the advisory guideline range in the draft PSR, and after expressing disappointment (but not actual innocence) with Waters's professionally reasonable decision to pursue only two of three objections to the draft PSR that Odom wanted to pursue. This court originally scheduled the sentencing hearing in this case for the December 14, 2020 term of court but repeatedly has had to continue it since that time. See [D.E. 33, 40, 48, 56]. To permit Odom to withdraw his guilty plea would inconvenience the court, waste judicial resources, and ignore that Odom's guilty plea was "a grave and solemn act." Hyde, 520 U.S. at 677 (quotation omitted).

## III.

In sum, the court DENIES defendant's motion to withdraw his guilty plea [D.E. 59]. The court will schedule Odom for sentencing.

SO ORDERED. This _23_ day of August, 2021.

James C. Dever III
JAMES C. DEVER III
United States District Judge

28